WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Geofry Bussen,<br><br>   Plaintiff,<br><br>v.<br><br>North Pointe Insurance Company, *et al.*,<br><br>   Defendants. | No. CV-20-00486-PHX-JJT<br><br>**ORDER** |

At issue is Defendant's Motion for Summary Judgment (Doc. 77, DMSJ), supported by Defendant's Statement of Facts (Doc. 78, DSOF), to which Plaintiff filed a Response (Doc. 81, Resp.) with an Additional Statement of Facts (Doc. 82, PSOF), and Defendant filed a Reply (Doc. 88, Reply). For the reasons that follow, the Court grants in part and denies in part Defendant's Motion.

**I.    BACKGROUND**

This is a bad faith case against Defendant North Pointe Insurance Company alleging improper handling of Plaintiff Geofry Bussen's worker's compensation claim. In March 2018, Plaintiff was hired by Launch Technical Workforce ("Launch"), a staffing company that provides employees in the aviation, aerospace, industrial, and ground transportation industry. (DMSJ at 3.) Plaintiff was hired as an aviation mechanic at Yuma Airport for a company called Blue Air Training. (DMSJ at 3.) In March 2018, Plaintiff signed a Certification of *Per Diem* Substantiation Agreement. ("Per Diem Agreement") (DSOF

¶ 2.) In the agreement, Plaintiff attested to certain statements making him eligible to receive a *per diem* allowance in addition to regular pay. (DSOF ¶ 5.)

On January 16, 2019, Plaintiff was seen in the emergency room of the Yuma Regional Medical Center ("YRMC") complaining of, among other things, "acute right posterior leg pain for the past several days." (DSOF ¶ 9.) X-rays showed sclerotic changes at spinal levels L4 and L5 that appeared "to be more than just degenerative arthritic changes, questionable possible sclerotic changes due to metastasis such as prostatic disease, degenerative/arthritic changes of lumbar spine, degenerative disc disease, [and] atherosclerotic vascular disease per radiologist's review." (DSOF ¶ 12.) The diagnosis was acute right lower leg pain secondary to sciatica and acute arthritis/sclerotic lesions of the lower spine. (DSOF ¶ 13.) Initially, Dr. Drew Paulson, the physician at YRMC who cared for Plaintiff, did not include that the injury occurred on-the-job; later, on March 26, 2019, Dr. Paulson updated his notes to include Plaintiff suffered an injury at work "moving a pallet of practice bombs." (DSOF ¶ 31; PSOF ¶ 4.) After Plaintiff's visit, YRMC referred Plaintiff to Dr. Shawn Hermanau, a spine surgeon with Desert Spine Institute. (DSOF ¶ 14.)

On January 22, 2019, Plaintiff reported to his employer, Launch, that he suffered a work-related injury on January 15, 2019. (DSOF ¶ 15.) That same day Plaintiff faxed the YRMC records to Ms. Kailee Ellis, Launch's risk manager. (DSOF ¶ 16.) The next day, Plaintiff was seen at NextCare Urgent Care where he reported suffering an injury after lifting a heavy object at work and was diagnosed with back pain and right-sided sciatica. (DSOF ¶¶ 17-18.) On January 28, 2019, Launch submitted Plaintiff's claim to Sedgwick, the adjuster for the claim, to "review[] for denial." (DSOF ¶ 20; PSOF ¶ 7.) Ms. Shanna Garrett, a Sedgwick employee, was assigned to review the claim. (PSOF ¶ 13.) During her investigation, Ms. Garrett reviewed the ER and Urgent Care records but, despite considering the condition as pre-existing, did not speak to Plaintiff or obtain his Veterans Affairs ("VA") records. (PSOF ¶¶ 16-24.) On February 28, 2019, Plaintiff was informed his claim was denied because it was a pre-existing condition. (PSOF ¶ 23.) After initially

denying the claim, Defendant hired Dr. Dilla to conduct an independent medical exam ("IME") on Plaintiff to address medical causation for Plaintiff's worker's compensation claim. (DSOF ¶ 33.) After Dr. Dilla's examination, Defendant issued a notice accepting Plaintiff's claim for worker's compensation benefits. (DSOF ¶ 36.)

Plaintiff also filed a claim with the Industrial Commission of Arizona ("ICA") (DSOF ¶ 29.) Using the payroll history provided by Launch, Defendant sent the recommended Average Monthly Wage ("AMW") calculation to the ICA for purposes of establishing Plaintiff's AMW. (DSOF ¶ 37.) Based on those figures, Defendant calculated Plaintiff's AMW to be $1,906.22. (DSOF ¶ 39.) Plaintiff protested the AMW, insisting he was entitled to $4,741.57. (DMSJ at 6.) During this time, both parties filed a stipulation with the ICA attesting "that there is a bona fide dispute regarding [the] [a]pplicant's AMW and whether the *per diem* should be included in the AMW." (DMSJ at 12.) On May 12, 2020, the parties filed a stipulation with the ICA agreeing to resolve the AMW issue at $3,556.17. (DSOF ¶ 40.)

Plaintiff has brought the present case alleging the Defendant did not engage in good faith when evaluating Plaintiff's worker's compensation benefits as they relate to medical treatment and wage calculations.

## II.   LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

### III. ANALYSIS

Defendant seeks "summary judgment on the following issues: (1) bad faith related to the investigation, evaluation[,] and initial denial of Plaintiff's claim; (2) bad faith related to underpayment of wages; (3) bad faith related to the alleged delay in surgery; and (4) punitive damages." (Reply at 1.) The Court will begin with the bad faith issues and then turn to punitive damages.

#### A.  Bad Faith

Arizona law "implies a covenant of good faith and fair dealing in every contract." *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986). On summary judgment, the "appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Id*. at 1010. "Under Arizona law, the tort of bad faith arises when an insurer 'intentionally denies, fails to process[,] or pay a claim without a reasonable basis.'"

*Jimenez v. Progressive Preferred Ins. Co.*, 2020 WL 2037113, at *10 (D. Ariz. 2020), *aff'd,* No. 20-15910, 2021 WL 3784268 (9th Cir. Aug. 26, 2021) (quoting *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 279 (Ariz. 2000)). Generally, the "essence of the duty of good faith and fair dealing is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Rawlings*, 726 P.2d at 565. Accordingly, claims for insurance bad faith "only arise[] when an insurance company intentionally denies or fails to process or pay a claim without a reasonable basis for such action." *Lasma Corp. v. Monarch Ins. Co. of Ohio*, 764 P.2d 1118, 1122 (Ariz. 1988). "Negligent conduct which results solely from honest mistakes, oversight or carelessness do[] not necessarily create bad faith liability even though it may be objectively unreasonable. Some form of consciously unreasonable conduct is required." *Trus Joist Corp. v. Safeco Ins. Co.,* 735 P.2d 125 (Ariz. Ct. App. 1986) (emphasis added).

To prove a claim of bad faith, a plaintiff must show that the defendant's handling of his claim was unreasonable, and that defendant intended to act unreasonably towards the plaintiff. *Milhone v. Allstate Inc.,* 289 F. Supp. 2d 1089, 1095–1103 (D. Ariz. 2003); *Lopez v. Allstate Ins. Co.,* 282 F. Supp. 2d 1095, 1100–1104 (D. Ariz. 2003); *Knoell v. Metropolitan Life Insurance Co.,* 163 F. Supp. 2d 1072 (D. Ariz. 2001). The inquiry involves both an objective finding and a subjective finding. *Lopez,* 282 F. Supp. 2d at 1100. When the actions taken on the part of the insurance company are reasonable, the insurance company will not be found to have acted in bad faith. *See Lopez,* 282 F. Supp. 2d at 1100–1104; *Milhone,* 289 F. Supp. 2d at 1095–1103; *Trus Joist Corp.,* 735 P.2d at 134 ("[s]ome form of consciously unreasonable conduct is required.").

As Plaintiff asserts, in 2000, *Zilisch* modified the test to determine bad faith, holding that the "fair debatability" of the insurer's coverage decision is not sufficient to defeat a bad faith claim. 995 P.2d at 280; *see also Jeffers v. Farm Bureau Prop. & Cas. Ins. Co.*, 2014 WL 4259485, at *4 (D. Ariz. 2014). "Instead, *Zilisch* held that bad faith liability extends not only to coverage decisions, but to any instances where the insurer (1) acted

- 5 -

unreasonably 'in the investigation, evaluation, and processing of the claim' and (2) 'either knew or was conscious of the fact that its conduct was unreasonable.' The first element is analyzed objectively, the second is analyzed subjectively, and both elements present fact questions ordinarily reserved for the jury." *Id*. (quoting *Zilisch*, 995 P.2d at 280).

Defendant cites Judge Teilborg's decision in *Knoell* to argue Arizona has not abandoned the 'fairly debatable' standard when analyzing claims of bad faith. (Reply at 2.) Instead, according to Defendant, *Knoell* recognized "when there is a question of fact as to liability on the underlying policy, then as a matter of law, the insurance company is not liable for bad faith." (Reply at 2 (internal citations omitted).) Contrary to Defendant's assertion, Judge Teilborg made clear that though the court "found that 'fair debatability' was the applicable standard based on the particular facts in *Knoell*, it recognized that bad faith claims must also be analyzed 'applying a general standard of reasonableness.'" *Young v. Allstate Ins. Co.*, 296 F. Supp. 2d at 1124 (D. Ariz. 2014) (quoting *Knoell*, 163 F. Supp. 2d at 1077). Accordingly, fair debatability of an insurer's coverage decision is not by itself sufficient to defeat a bad faith claim.

### 1. There is a Genuine Dispute of Material Fact Whether Defendant Exercised Bad Faith Related to Its Investigation, Evaluation, and Initial Denial of Plaintiff's Claim

As articulated in *Zilisch*, the first prong of the test for bad faith is an objective test based on reasonableness. 995 P.2d at 280. Defendant argues "Plaintiff's claim exhibits several "red flags" making his claim for compensability 'debatable,' *e.g.* (1) conflicting reports of injury; (2) gradual onset of pain; (3) delayed reporting; and (4) evidence of pre-existing condition without clear confirmation of aggravation." (PMSJ at 7.) Accordingly, Defendant argues, its actions were reasonable as a matter of law. Plaintiff contends there is a genuine issue of material fact whether Defendant's actions were objectively reasonable. In an effort to survive summary judgment, Plaintiff cites *Demetrulias v. Wal-Mart Stores*, 917 F. Supp. 2d 993 (D. Ariz. 2013).

In *Demetrulias*, plaintiff filed a worker's compensation claim with her employer, Wal-Mart, after sustaining an injury at work. *Id*. at 998. Over the next year, plaintiff made multiple visits to doctors for treatment and diagnosis, and there was a significant amount of back and forth between plaintiff, her doctors, and Wal-Mart's claims adjusters. *See id.* at 998-1003. Plaintiff sued Wal-Mart for bad faith, and Wal-Mart moved for summary judgment. *Id.* at 1003.

Wal-Mart refused to cover the plaintiff's carpel tunnel injury because it alleged the injury was pre-existing and no medical evidence supported a hand or wrist problem. *Id.* at 1006. In her opposition to summary judgment, plaintiff showed that her doctor reported hand and wrist issues six weeks after the injury and that, though the medical records did not specify which wrist the older carpal tunnel diagnosis applied to, it was eventually understood the pre-existing condition related to the opposite hand. *Id.* at 999. The court held that the plaintiff "presented enough evidence to raise questions about the thoroughness of [defendant's] investigation." *Id.* The court held that this evidence supported plaintiff's bad faith claim and, based on this and other evidence, denied summary judgment to Wal-Mart.

Plaintiff argues, like in *Demetrulias,* Defendant "failed to investigate [Plaintiff's] claim and instead denied the clams as 'pre-existing.'" (Resp. at 11.) To support Plaintiff's argument, he points to deposition testimony from Ms. Garrett, the claim adjuster, where she admits Defendant did not reach out to Plaintiff or obtain Plaintiff's VA records prior to issuing a denial. (Resp. at 11-12.) In the present case, the initial emergency room records describe Plaintiff's injury as an "acute right posterior leg pain for the past several days." (DMSJ at 7.) Plaintiff "denie[d] any trauma [and] describe[d] the onset of pain as gradual." (DMSJ at 7.) Later, Plaintiff reported a history of swelling in his lower legs and complained of "lower back pain." (DMSJ at 8.) Like in *Demetrulias*, Plaintiff presented enough evidence to raise questions about his injury, and Defendant was obligated to investigate such claims. Indeed, Defendant admits as much in its briefings, stating "[o]bjectivley, this claim needed further investigation and compensability was not a forgone conclusion." (DMSJ at 8.) A reasonable juror could find Defendant's lack of investigation into

1    Plaintiff's VA records as objectively unreasonable. Accordingly, Plaintiff has presented
2    enough evidence to raise issues of fact as to whether Defendant's conduct was objectively
3    unreasonable.
4         The second prong is a subjective test. To survive Plaintiff must show Defendant was
5    "conscious of the fact that its conduct was unreasonable." *Zilisch*, 995 P.2d 276 at 280.
6    "Where a plaintiff proceeds on a theory that her claim was denied or delayed because the
7    insurer failed to adequately investigate her claim, the evidence may support both the
8    objective unreasonableness of the insurer's actions and also the existence of the
9    subjective." *Demetrulias*, 917 F. Supp. 2d at 1006-7. Thus, Plaintiff, who already has
10   presented evidence to support his allegation that Defendant failed to adequately investigate
11   his claim, has raised a genuine issue of material fact sufficient to defeat Defendant's
12   Motion.
13        Nevertheless, ██████████████████████████████████
14   ████████████████████████████████████████████████████████
15   ██████████████████████████████████████████████████ Again,
16   *Demetrulias* is instructive. In her opposition to the summary judgment motion, the plaintiff
17   in *Demetrulias* produced evidence of Wal-Mart's claims management practices and
18   policies. *Id.* at 1009. Specifically, she demonstrated that Wal-Mart claims supervisors "set
19   monthly and annual goals to close workers' compensation files," with a typical goal of
20   "clos[ing] the same number of claims that are opened." *Id.* One of the supervisors who
21   worked on plaintiff's claim "constantly kept his team informed on where they were in
22   relation to [this] goal." *Id.* And on "Blitz Wednesday" toward the end of each month, extra
23   effort was expended to close files. *Id.* The court held that this evidence supported plaintiff's
24   bad faith claim and denied summary judgment to Wal-Mart.
25   ████████████████████████████████████████████████████████
26   ████████████████████████████████████████████████████████
27   ████████████████████████████████████████████████████████
28   ████████████████████████████████████████████████████████

1
2
3
4
5
6
7
8 ██████████████████████████████ Accordingly, viewed as a whole, Plaintiff has
9 presented enough evidence to raise issues of fact as to whether Defendant's conduct was
10 subjectively unreasonable.

11
12
13

       **2.**       **There is No Genuine Dispute of Material Fact Whether Defendant Exercised Bad Faith Related to Its Initial Underpayment of Wages**

14       "The ICA has exclusive jurisdiction to adjudicate workers' compensation benefits,
15 and a plaintiff generally cannot bring an action for bad faith denial of benefits if he has not
16 first sought relief through the ICA." *Hunton v. Am. Zurich Ins. Co.*, 2017 WL 527278, at
17 *2 (D. Ariz. Feb. 9, 2017); *see also Merkens v. Fed. Ins. Co.*, 349 P.3d 1111, 1115 (Ariz.
18 Ct. App. 2015). Arizona's Workers' Compensation Act, however, "does not bar a common
19 law tort action that is independent of the workers' benefit claim process if the conduct does
20 not fall within the coverage of the Act." *Merkens,* 349 P.3d at 1113 (internal quotation and
21 citation omitted).

22       Relying on *Merkens*, Defendant argues that the Court lacks jurisdiction to decide
23 the compensability issues alleged because Plaintiff did not "seek a compensability
24 determination from the ICA." (Reply at 8.) In *Merkens*, the plaintiff had not sought a
25 compensability determination from the ICA, and instead sued to recover unpaid
26 compensation and benefits post termination. *Id.* at 1114. Thus, the plaintiff sought a jury
27 to determine both her entitlement to benefits and the amount to which she was entitled. *Id.*
28 at 1115-16. Notably, the plaintiff abandoned her bad faith handling claims and "t[ied] all

of her damages to the denial of benefits." *Id*. at 1114. On those facts, the Arizona Court of Appeals held that the plaintiff was required to pursue administrative remedies before pursing her claim for bad faith because she asserted damages based solely on the termination of benefits. *Id*. at 1115-16.

In this case, however, Plaintiff does not claim that his damages are tied to the termination of benefits. Instead, he alleges that Defendant improperly handled his claim. "Put differently, [Plaintiff] is not disputing the amount of his benefits that he is owed. Rather, [Plaintiff is alleging] that the delay in payment of those benefits from August 2019 to May 2020 harmed him." (Resp. at 16.) The present case does not tread on the exclusive jurisdiction of the ICA since the finder of fact in this case is not asked to determine whether the injured worker is entitled to benefits or the amount of those benefits. Accordingly, so long as Plaintiff raises a genuine issue of material fact as to Defendant's bad faith conduct related to underpaying Plaintiff's wages, the claim may proceed to trial.

To defeat summary judgment, Plaintiff argues Defendant's underpayment coincided with "improper pressure from Launch based on arbitrary reasons." (Resp. at 15.) To support this allegation Plaintiff cites statements from Ms. Patty Rhoads, a consultant hired by Launch to allegedly control the cost of worker's compensation, seeking to limit Plaintiff's indemnity benefits. (Resp. at 15.) Specifically, Ms. Rhoads stated she did not agree with the Temporary Total Disability ("TTD") payment due to the Plaintiff. (Resp. at 7.) Plaintiff alleges, without citing any support, that consistent with Ms. Rhoads' demand, Sedgwick, the adjuster for the claim, refused to consider Plaintiff's *per diem* as part of his average wages. (Resp. at 15.)

Defendant, relying on *Free v. Indus. Comm'n of Arizona*, contends it was objectively reasonable for Defendant to exclude Plaintiff's *per diem*. 471 P.3d 1038, 1040–41 (Ct. App. 2020) ("Arizona case law … establishes that expense reimbursements are excluded from [AMW] if they are reasonably related to the worker's costs, but that unjustified, excessive or sham reimbursements may qualify as wages regardless of their label."). Defendant states "Plaintiff offered no evidence 'establishing the *per diem* was unjustified,

excessive[,] or sham reimbursements.'" (DMSJ at 11 (quoting *Free*, 471 P.3d at 1040–41).) Thus, according to the Defendant, it was reasonable to not include Plaintiff's *per diem* allowances in the AMW calculations. (DMSJ at 11.) Further, Defendant emphasizes that the parities filed a stipulation with the ICA attesting "that there is a bona fide dispute regarding [Plaintiff's] AMW and whether the *per diem* should be included in the AMW." (DMSJ at 12.) Black's Law Dictionary defines "bona fide" as "made in good faith; without fraud or deceit." Black's Law Dictionary (11th ed. 2019). The Court concludes that Plaintiff, though this stipulation to the ICA, admits Defendant's conduct was - at the very least - subjectively reasonable. In fact, the stipulation acknowledges Defendant's conduct was in good faith. As a result, since both Plaintiff and Defendant at the time of negotiating understood the disagreement was in good faith, no reasonable juror could find Defendant's conduct subjectively unreasonable. Accordingly, Plaintiff's bad faith claims related to underpaid wages are dismissed.

### 3. Plaintiff's Bad Faith Claim Related to Defendant's Alleged Delay in Surgery Will Proceed to Trial

Plaintiff has also pled that Defendant unreasonably delayed his surgery. (Resp. at 14.) Defendant, in its Motion, does not bring this claim before the Court. (DMSJ.) Only after Plaintiff's Response does Defendant identify its omission and address this issue for the first time in its Reply. (Reply at 8-11.) "It is well established in this circuit that courts will not consider new arguments raised for the first time in a reply brief." *Surowiec v. Capital Title Agency, Inc.*, 790 F. Supp. 2d 997, 1002 (D. Ariz. 2011) (quoting *Bach v. Forever Living Prods. U.S., Inc.*, 473 F. Supp. 2d 1110, 1122 n.6 (W.D. Wash. 2007)). Because Defendant did not raise the issue until its Reply, the Court will not consider this argument. Plaintiff's bad faith claims as they relate to delays in surgery will proceed to trial.

### B. Plaintiff's Punitive Damages Claim is Dismissed

Under Arizona law, evidence of "gross negligence" or "reckless disregard of the circumstances" is not sufficient for punitive damages. *Bauerlein v. Equity Residential Properties Management Corp.*, 2009 WL 89531, at *3 (D. Ariz. 2009) (quoting *Volz v.*

1  *Coleman Co.*, 748 P.2d 1191 (1987).). Rather, the punitive damages standard requires
2  "something more" than gross negligence. *Id*. (citing *Rawlings*, 726 P.2d at 565). "The
3  'something more' is the evil mind, which is satisfied by evidence that 'defendant's
4  wrongful conduct was motivated by spite, actual malice, or intent to defraud' or
5  defendant's 'conscious and deliberate disregard of the interest and rights of others.'" *Id*.
6  (quoting *Volz*, 748 P.2d at 1191). Punitive damages are not warranted unless "defendant
7  acted with a knowing or culpable state of mind, or defendant's conduct was so egregious
8  that an evil mind can be inferred." *Id*. Proof of bad faith does not automatically trigger the
9  recoverability of punitive damages. *See Rawlings*, 726 P.2d at 577 ("The argument is
10 advanced that since bad faith is a species of intentional tort, punitive damages are
11 automatically recoverable in every case in which the plaintiff proves that the tort was
12 committed. We reject that contention.").

13     Plaintiff argues that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
14 ▓▓▓▓▓▓▓ Plaintiff should be allowed to pursue punitive damages. To support this
15 assertion Plaintiff points to the fact that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
16 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and that statements from Ms. Garrett, Ms. Ellis, and
17 Ms. Rhoads all encouraged claim closure. (Resp. at 14-15.) "The evolution of the law of
18 bad faith has not reached the point where it is wrong for an insurance company to make a
19 profit, much less follow good business practices. … Additionally, a company keeping
20 statistics on resolution of claims and looking to their 'bottom line' are reasonable internal
21 procedures." *Knoell*, 163 F. Supp. 2d at 1078. As a result, evidence ▓▓▓▓▓▓
22 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ is not sufficient for punitive damages.
23 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
24 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
25 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
26 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
27 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
28 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Though Ms. Ellis provided the

claim "to be reviewed for denial," she was an employee of Launch, not Defendant. Additionally, as Defendant points out, Ms. Ellis acknowledged "that Defendant would make its own claim decision regardless of her comments to deny. [Pls. Ex. 16, pg. 27:2-6 and 28:1-11 'What the insurance company does, though, is up to them.']" (Reply at 7.) More, there are no facts suggesting Defendant arbitrarily issued a denial following Ellis's or anyone else's request.[1] Plaintiff also points to statements from Dr. Sharma and Dr. Scott stating delays impacted Plaintiff's health. These statements, however, do not show that Defendant's conduct was motivated by "spite, actual malice, or [an] intent to defraud." *Bauerlein*, 2009 WL 89531 at *3. Without "something more," Plaintiff fails to show sufficient evidence to support punitive damages. Accordingly, Defendant's motion for summary judgment regarding punitive damages is granted.

## IV.    CONCLUSION

The Court grants summary judgment on bad faith claims related to the underpayment of wages and on punitive damages. The other claims will proceed to trial.

**IT IS THEREFORE ORDERED** granting in part and denying in part Defendant's Motion for Summary Judgment (Doc. 77).

**IT IS FURTHER ORDERED** that the Court will set a pre-trial conference by separate Order.

Dated this 8th day of February, 2022.

_____
Honorable John J. Tuchi
United States District Judge

---

[1] In his Response Plaintiff states, "Defendant collaborated with employer-Launch's arbitrary goal to reduce worker's compensation costs and limit the claim" yet does not provide a citation to the record that supports this assertion. (Resp. at 17.) Rule 56 provides that the respondent must cite "to particular parts of materials in the record," and "[t]he court need consider only the cited materials" in the briefings. Fed. R. Civ. P. 56(c)(1), (3); *see also Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) ("Judges are not like pigs, hunting for truffles buried in briefs.").